22-6063
Deleg-Alvarracin v. Garland

BIA
Reid, IJ
A059 117 186

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of February, two thousand twenty-four.

PRESENT:
      JOSÉ A. CABRANES,
      RAYMOND J. LOHIER, JR.,
      WILLIAM J. NARDINI,
        *Circuit Judges.*
_____

CARLOS FERNANDO DELEG-ALVARRACIN,
      *Petitioner*,

      v.              **22-6063**
                      NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
      *Respondent*.
_____

**FOR PETITIONER:**    Craig Relles, Law Office of Craig Relles, White Plains, NY.

**FOR RESPONDENT:**    Brian Boynton, Principal Deputy Assistant Attorney General; Brianne Whelan Cohen, Senior Litigation Counsel; Matthew A. Spurlock, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Carlos Fernando Deleg-Alvarracin, a native and citizen of Ecuador, seeks review of a January 11, 2022 decision of the BIA affirming a September 1, 2021 decision of an Immigration Judge ("IJ") denying his application for relief under the Convention Against Torture ("CAT").[1] *In re Carlos Deleg-Alvarracin*, No. A 059 117 186 (B.I.A. Jan. 11, 2022), *aff'g* No. A 059 117 186 (Immig. Ct. N.Y. City Sept. 1, 2021). We assume the parties' familiarity with the underlying facts and procedural history.

Because the BIA summarily affirmed the IJ's decision, we have reviewed the IJ's decision as the final agency determination. *See Shunfu Li v. Mukasey*, 529 F.3d

---

[1] He does not challenge the denial of asylum or withholding of removal.

2

141, 146 (2d Cir. 2008). Contrary to Deleg-Alvarracin's position, the BIA's streamlining procedure that allows for summary affirmance of an IJ's decision without opinion does not violate due process. *Yu Sheng Zhang v. U.S. Dep't of Just.*, 362 F.3d 155, 157 (2d Cir. 2004) ("[T]he streamlining regulations' provision for summary affirmance of IJ decisions by a single Board member does not deprive an asylum applicant of due process."). And we lack jurisdiction to review the BIA's decision to invoke that process. *Kambolli v. Gonzales*, 449 F.3d 454, 465 (2d Cir. 2006) ("[W]e lack jurisdiction to review a claim that a single BIA member erred in deciding to resolve unilaterally an appeal of an IJ's order and not to refer the case to a three-member BIA panel.").

Thus, the only issue for our review is Deleg-Alvarracin's CAT claim. Although he was ordered removed for an aggravated felony, the jurisdictional limitation in 8 U.S.C. § 1252(a)(2)(C) does not apply to our review of a CAT claim. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1690–92 (2020). We review legal conclusions de novo and findings of fact for substantial evidence. *Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

3

We conclude that substantial evidence supports the IJ's decision.  A CAT applicant has the burden to establish that he will "more likely than not" be tortured.[2]  8 C.F.R. § 1208.16(c)(2).  "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or . . . with the consent or acquiescence of, a public official . . . or other person acting in an official capacity."  *Id.* § 1208.18(a)(1).  In assessing whether an applicant is more likely than not to be tortured in the proposed country of removal, the agency shall consider:

> (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

*Id.* § 1208.16(c)(3).  "[A]n alien will never be able to show that he faces a more likely than not chance of torture if one link in the chain cannot be shown to be more likely than not to occur.  It is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link."  *Savchuck v. Mukasey*, 518 F.3d 119,

---

[2] Citations are to the version of the regulations in effect at the time of the IJ's decision.

123 (2d Cir. 2008) (quoting *In re J–F–F–*, 23 I. & N. Dec. 912, 918 n.4 (A.G. 2006)).

Deleg-Alvarracin testified that he feared torture in Ecuador because he was convicted in the United States of downloading child pornography, because gangs and other people will think he is wealthy as a result of having lived in the United States, and because of his illnesses, disability, and appearance stemming from a childhood injury. As to past harm, he and his mother testified as follows. When he was a child, people in his small community threw rocks at his house because his father was living in the United States, and they thought the family had money. Adults bullied him and his siblings after his mother left for the United States when he was 15. When he was 16 or 17, gangs once hit him when he did not give them money. Masked men twice robbed the family, once tying them up.

His country conditions evidence reflects that criminal suspects and prisoners are mistreated. There is one report of a street vendor with disabilities being mocked and assaulted by a police officer; however, the 2020 State Department report for Ecuador states that the law prohibits discrimination against individuals with disabilities, stipulates rights to health facilities and insurance, and mandates scholarship and student loan programs for disabled people. A 2020 report by the Overseas Security Advisory Council discusses crime in Ecuador and

5

the general public's limited access to medical treatment but does not report intentional torture of people with disabilities or epilepsy. A 2020 Human Rights Watch Report discusses police abuses and poor prison conditions. And a 2017 report in the American Academy of Neurology identified stigma in Ecuador towards people with epilepsy.

Based on this record, the IJ reasonably found Deleg-Alvarracin's fear of torture speculative. *See Savchuck*, 518 F.3d at 123–24. He did not suffer past harm that rose to the level of torture or demonstrate that disabled people or any other category of people were regularly subject to abuse or torture. 8 C.F.R. § 1208.16(c)(3)(i), (iii); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157–58 (2d Cir. 2008) ("[W]hen a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision."). Absent "solid support" in the record, his fear of torture is "speculative at best." *Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005).

Moreover, his argument that he would be subject to Ecuador's criminal justice system because of his perceived American status or criminal record is unsupported. Although one article documented a data breach by a marketing

firm in Ecuador, that breach exposed names, birth dates, tax ID's, and employment information, not criminal records. And while prison conditions may be poor, Deleg-Alvarracin has had no contact with Ecuador's criminal justice system, and he testified that he had no problems with government authorities in the past. While Deleg-Alvarracin presented reports that U.S. tourists have been subject to crimes ranging from pickpocketing to homicide, the IJ reasonably determined it was unlikely that Deleg-Alvarracin—who speaks Spanish and lived in Ecuador until he was 20—would be perceived as a wealthy American.

In sum, substantial evidence supports the IJ's determination that Deleg-Alvarracin did not demonstrate that he is "more likely than not" to be tortured. 8 C.F.R. § 1208.16(c)(2); *see also Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021) ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled [a] . . . finding different from that reached by the agency.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

7