21-6603
*Ramirez Alvarado v. Bondi*

BIA
Reid, IJ
A208 263 144

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of September, two thousand twenty-five.

PRESENT:
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

CARLOS ENRIQUE RAMIREZ ALVARADO,

> *Petitioners*,

> v.

PAMELA BONDI, United States Attorney General,

> *Respondent*.

No. **21-6603**
NAC

_____

For Petitioner:                      Nhu-Y Ngo, The Bronx Defenders, Bronx,
                                     NY.

For Respondent:                      Brian Boynton, Principal Deputy Assistant
                                     Attorney General; Keith I. McManus,
                                     Assistant Director; Leslie McKay, Senior
                                     Litigation Counsel; Office of Immigration
                                     Litigation, United States Department of
                                     Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of

Immigration Appeals ("BIA") decision, **IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the petition for review is **DENIED**.

Petitioner Carlos Enrique Ramirez Alvarado, a native and citizen of El

Salvador, seeks review of a BIA decision affirming a decision of an Immigration

Judge ("IJ") denying his application for asylum, withholding of removal, and relief

under the Convention Against Torture ("CAT"). *In re Carlos Enrique Ramirez*

*Alvarado,* No. A 208 263 144 (B.I.A. Oct. 19, 2021), *aff'g* No. A 208 263 144 (Immigr.

Ct. N.Y.C. Oct. 6, 2020). We assume the parties' familiarity with the underlying

facts and procedural history.

Under the circumstances, we review the IJ's decision as supplemented by

the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review fact-

finding "under the substantial evidence standard" and questions of law and the

application of law to fact *de novo*. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I. Asylum and Withholding of Removal

An applicant has the burden of proving eligibility for asylum. *See* 8 C.F.R. § 1208.13(a). He may do so by demonstrating that he has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See id.* section 1208.13(b); *see also KC v. Garland*, 108 F.4th 130, 134 (2d Cir. 2024). If an applicant establishes past persecution, he "is presumed to have a well-founded fear of persecution." *KC*, 108 F.4th at 134-35. The government, however, may rebut that presumption if "there has been a fundamental change in circumstances" or "the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." *Id.* at 135 (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A)–(B)). An applicant must prove "a sufficiently strong nexus" between the suffered or feared harm and a protected ground. *Castro v. Holder*, 597 F.3d 93, 100 (2d Cir. 2010). "Whether the requisite nexus exists depends on the views and motives of the persecutor." *Paloka*

3

*v. Holder*, 762 F.3d 191, 196–97 (2d Cir. 2014).  And an applicant "must provide *some* evidence" – "direct or circumstantial" – to establish the persecutor's motive.  *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).  "To qualify as 'persecution' the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is 'unable or unwilling to control.'"  *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (internal quotation marks omitted).

The agency did not err in determining that Ramirez Alvarado had not established persecution on account of his political opinion.  Merely refusing to join a gang, without more, does not constitute a political opinion.  *See Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 200 (2d Cir. 2021).  Rather, an "applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political belief," *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005), which "must involve some support for or disagreement with the belief system, policies, or practices of a government and its instrumentalities, an entity that seeks to directly influence laws, regulations, or policy, an organization that aims to overthrow the government, or a group that plays some other similar role in society," *Zelaya-Moreno*, 989 F.3d at 199–200

4

(internal citations omitted).

Ramirez Alvarado has offered no evidence to suggest that he opposed the gang's belief systems or policies, much less that he was likely to be harmed by the government or by gang members on account of his actual or imputed political opinion. Ramirez Alvarado's testimony reflected that he was beaten by MS-13 gang members because of his tardiness and because he attempted to leave the gang; he concedes that members of MS-13 were upset with him because he was "not obeying them." Certified Admin. R. ("CAR") at 223, 858. However, "opposition to criminal elements such as gangs, even when such opposition incurs the enmity of these elements, does not thereby become *political* opposition simply by virtue of the gang's reaction." *Zelaya-Moreno*, 989 F.3d at 201. Because Ramirez Alvarado has not established that he was persecuted because of his political opinion within the meaning of the statute, the BIA did not err in concluding that he was ineligible for asylum.

## II. CAT Protection

Ramirez Alvarado seeks relief pursuant to CAT based on his fear of torture by MS-13 for renouncing his membership, and by Barrio 18 and the Salvadoran police based on his past gang affiliation. To merit such relief, he must show that

5

he would "more likely than not" be tortured and that the torture would be by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). In evaluating such a claim, the agency must consider all evidence relevant to the possibility of future torture, including past torture and evidence of "human rights violations" and "conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3). We review the agency's findings of fact for substantial evidence and its resolution of "questions of law regarding what evidence will suffice to carry any . . . applicant's burden of proof" *de novo. Joaquin-Porras v. Gonzales*, 435 F.3d 172, 181 (2d Cir. 2006).

**A. Fear of Gangs**

"A private actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene." *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) (emphasis omitted); *see also* 8 C.F.R. § 1208.18(a)(7).

Ramirez Alvarado argues that the agency overlooked and mischaracterized evidence in the record, including (1) a statement from his sister confirming a 2016 MS-13 gang attack in the United States and (2) post-hearing evidence of his

6

mother's murder in June 2021, which was submitted in support of his motion to remand. But the IJ explicitly stated that all evidence was considered, and there is nothing in the record to suggest otherwise. *See Xiao Ji Chen v. U.S. Dept. of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2009) ("[W]e presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise."); *see also Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008) (the agency need not "expressly parse or refute on the record each individual argument or piece of evidence offered").

The IJ was entitled to assign little weight to the sister's statement, which was not subject to cross-examination and involved an incident that occurred four years before the hearing. *See Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020); *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence."). And while it is true that the IJ did not have the opportunity to consider the murder of Ramirez Alvarado's mother in the IJ's October 6, 2020 decision – which pre-dated the murder by eight months – the BIA did consider the murder when evaluating Ramirez Alvarado's motion to remand. Based on the totality of the record before it, the BIA reasonably concluded that Ramirez Alvarado failed to

7

establish either a link between the murder and the gangs or that the government "would be willfully blind or acquiesce in his torture." CAR at 7.

Ramirez Alvarado's arguments to the contrary are unpersuasive. His assertion that the mother of his child had been threatened by MS-13 members in El Salvador because of him is unsupported in the record. In addition, the purported threat of MS-13, more generally, is undermined by the undisputed fact that his sister resides in his hometown and has not been threatened or contacted by MS-13 members during the time that Ramirez Alvarado has been away. And while Ramirez Alvarado makes much of the country conditions evidence, which reflects that gangs in El Salvador punish members for violating gang rules and attempting to leave the gang, such general evidence is not enough to establish that the gang will "more likely than not" torture an applicant. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2022) (noting that an applicant "cannot secure CAT relief [merely] by pointing to conflicting evidence that might support–but not compel–a different conclusion"); *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 (2d Cir. 2003) (holding that general country conditions evidence demonstrating incidents of torture in a country are not enough and that an applicant for CAT relief must provide some evidence "that someone in his particular alleged

8

circumstances is more likely than not to be tortured" (emphasis omitted)).

Ramirez Alvarado now argues that he need not show acquiescence because MS-13 is a "de facto" state actor. But this argument is unexhausted, because Ramirez Alvarado did not raise it before the BIA. *See Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024). Therefore, we will not address that argument here.

## B. Fear of the Government

Substantial evidence likewise supports the agency's conclusion that Ramirez Alvarado failed to demonstrate that he would more likely than not be tortured by Salvadoran authorities were he to be returned to his native country. Although Ramirez Alvarado alleges that Salvadoran police had previously tortured him, his past interactions with the police took place when he was a known gang member engaged in gang-related activities. The agency did not abuse its discretion in concluding that his subsequent renunciation of gang membership and gang activity lessens the risk of contact with the police. *See Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (placing burden on applicant to show the likelihood of each link in the chain to establish likelihood of future torture). And while it is true that the country conditions evidence submitted in support of his I-589 application indicates that Salvadoran authorities may target former gang

9

members, such evidence – without more – is insufficient to establish a likelihood of torture. *See* CAR at 320; *see Mu-Xing Wang*, 320 F.3d at 144; *see also Quintanilla-Mejia*, 3 F.4th at 592.

### III. Motion to Remand

Finally, Ramirez Alvarado argues that the BIA abused its discretion by declining to remand based on evidence of the murder of his mother. "We review the BIA's denial of a motion to remand for consideration of new evidence for abuse of discretion," and will find abuse where the BIA "has acted in an arbitrary or capricious manner." *Li Yong Cao v. Dep't of Just.*, 421 F.3d 149, 151 (2d Cir. 2005). "A motion to remand that relies on newly available evidence is held to the substantive requirements of a motion to reopen." *Id.* at 156. The applicant must show that "the proffered new evidence would likely alter the result in h[is] case." *Jian Hui Shao*, 546 F.3d at 168.

The BIA did not abuse its discretion in denying the motion to remand. While Ramirez Alvarado speculates in his declaration that his mother was "killed by either MS-13 in retaliation for [Ramirez Alvarado] leaving the gang or by the 18th Street gang" because they realized his mother's connection to him, CAR at 33, the news articles submitted in support of his remand motion reflect that the motive

for his mother's murder was "unknown" and that government officials were still investigating the crime, *id.* at 38.  He submitted no additional evidence in support of his contention that his mother's murder was in any way connected to him.  Based on the record before it, the BIA did not abuse its discretion in concluding that the newly submitted evidence would not alter the result of Ramirez Alvarado's case.  *See Jian Hui Shao*, 546 F.3d at 168.

*    *    *

For the foregoing reasons, the petition for review is DENIED.  All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court